UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Nos. |
| | ) | 8:22-cv-02422-TDC |
| THINK COMPUTER CORPORATION | ) | 8:22-cv-02573-TDC |
| d/b/a PLAINSITE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AND REMAND**

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

STATEMENT OF FACTS AND PROCEEDINGS TO DATE . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      THE AMENDED NOTICE OF REMOVAL AND SECOND NOTICE OF
        REMOVAL PROPERLY PLEADED DIVERSITY JURISDICTION, AND
        DEFENDANT HAS SHOWN THAT DIVERSITY JURISDICTION EXISTS . . . . . . . 10

        A.      Because the Notices of Removal Pleaded the Elements of Diversity
                Jurisdiction, the Court Should Apply the Preponderance of Evidence
                Standard to Decide Whether There is Diversity Jurisdiction Here. . . . . . . . . . . 10

        B.      The Evidence Establishes that Johnson Is a Citizen of a State Diverse from
                Think. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        C.      The Evidence Establishes That More Than $75,000 Is in Controversy . . . . . . . . 14

II.     THE NOTICES OF REMOVAL PROPERLY BROUGHT THIS CASE TO
        FEDERAL COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Alexander v. Kirkpatrick*,
  2019 WL 4164882 (D.N.M. Sept. 3, 2019)
  *report and recommendation adopted*, 426 F. Supp.3d 1005 (D.N.M. 2019). . . . . . . . . . 18

*Amzura Enterprises v. Ratcher*,
  18 Fed. App'x 95 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Brennan v. Stevenson*,
  2015 WL 7454109 (D. Md. Nov. 24, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Bunton v. Cape Cod Village*,
  2009 WL 2139441 (C.D. Ill. July 6, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Burns v. Windsor Insurance Co.*,
  31 F.3d 1092 (11th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Burroughs v. Palumbo*,
  871 F. Supp. 870 (E.D. Va.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Chek v. State Farm Fire and Cas. Co.*,
  2014 WL 12680676 (E.D.N.C. Mar. 17, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cohen v. Herick*,
  2015 WL 12820463 (M.D. Fla. Jan. 9, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Copak v. State Farm Mut. Auto. Ins. Co.*,
  2013 WL 450198 (N.D. Ind. Feb. 6, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dart Cherokee Basin Operating Co. v. Owens*,
  574 U.S. 81 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11

*Dixon v. Edwards*,
  290 F.3d 699 (4th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Doe Company v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Doe v. Chao*,
  540 U.S. 614 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doustout v. G.D. Searle & Co.*,
　　680 F. Supp. 49 (D. Me. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*eBay Inc. v. MercExchange, L.L.C.*,
　　547 U.S. 388 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*F.A.A. v. Cooper*,
　　566 U.S. 284 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Food & Water Watch v. Smithfield Foods*,
　　2021 WL 8821537 (D.D.C. Dec. 6, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gebbia v. Wal-Mart Stores*,
　　233 F.3d 880 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gomer v. Home Depot U.S.A.*,
　　2016 WL 5791226 (D. Md. Oct. 4, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hacker v. Aetna Life Ins. Co.*,
　　2019 WL 638369 (E.D. Ky. Feb. 13, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hall v. Coca-Cola Co.*,
　　2018 WL 4928976 (E.D. Va. Oct. 11, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Harrison v. Wahatoyas, L.L.C.*,
　　253 F.3d 552 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Harvey v. U.S. Life Ins. Co. in City of New York*,
　　2008 WL 2805608 (E.D. Pa. July 18, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Harvey-Jones v. Coronel*,
　　196 A.3d 36 (Md. Spec. App. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Heyman v. Lincoln Natl. Life Ins. Co.*,
　　781 Fed. App'x 463 (6th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Heyman v. Lincoln Natl. Life Ins. Co.*,
　　2017 WL 3274452 (W.D. Ky. Apr. 27, 2017),
　　*aff'd*, 781 Fed. App'x 463 (6th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Bigelow*,
　　179 F.3d 1164 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re IFC Credit Corp.*,
    663 F.3d 315 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In Touch Concepts v. Cellco P'ship*,
    788 F.3d 98 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Instituto de Educacion Universal Corp. v. U.S. Dept. of Educ.*,
    209 F.3d 18 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Johnson v. Affiliated Computer Servs.*,
    2011 WL 4011429 (N.D. Tex. Sept. 9, 2011)
    *aff'd*, 500 Fed. App'x 265 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Johnson v. Affiliated Computer Servs.*,
    500 Fed. App'x 265 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Johnson v. Ashmore*,
    2016 WL 3467052 (N.D. Tex. June 8, 2016)
    *aff'd*, 681 Fed. App'x 345 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

*Johnson v. Experian Info.*,
    2015 WL 7769502 (D. Md. Nov. 17, 2015),
    *aff'd*, 670 Fed. App'x 778 (4th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Joy Family Ltd. Part. v. United Financial Banking Cos.*,
    2013 WL 4647321 (D. Md. Aug. 28, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*JTH Tax, Inc. v. Frashier*,
    624 F.3d 635 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kay v. Ehrler*,
    499 U.S. 432 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Khalifa v. Shannon*,
    945 A.2d 1244 (Md. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lance v. Dennis*,
    546 U.S. 459 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lang v. Manufacturers & Traders Tr. Co.*,
    274 F.R.D. 175 (D. Md. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lovero v. Da Silva*,
    28 A.3d 43 (Md. Ct. Spec. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McFadden v. Fed. Nat. Mortg. Ass'n*,
    525 Fed. App'x 223 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Memon v. Allied Domecq QSR*,
    385 F.3d 871 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Merritt v. Craig*,
    746 A.2d 923 (Md. Spec. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Momin v. Maggiemoo's Intern.*,
    205 F. Supp. 2d 506 (D. Md. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12, 19

*Mudd v. Comcast of Maryland*,
    2015 WL 773017 (D. Md. Feb. 23, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Newman v. Spectrum Stores*,
    109 F. Supp. 2d 1342 (M.D. Ala. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Nieto v. University of New Mexico*,
    727 F. Supp. 2d 1176 (D.N.M. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Perez v. Sodexo, Inc.*,
    2021 WL 2333640 (E.D.N.Y. June 7, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Perry v. National Association of Home Builders of the United States*,
    No. THC-20-0454 (D. Md. Sept. 28, 2020),
      https://scholar.google.com/scholar_case?case=17209313522313030262. . . . . . . . . . . . 18

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Runge v. Maffei*,
    1996 WL 164383 (N.D. Ill. Apr. 2, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Schueller v. Wells Fargo & Co.*,
    2016 WL 10538996 (D.N.M. May 3, 2016)
    *report and recommendation adopted* 2016 WL 10538997 (D.N.M. May 26, 2016) . . . . 15

*Shaw v. Dow Brands*,
    994 F.2d 364 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
    303 U.S. 283 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stehle-Rosellini v. Allstate Corp.*,
    2010 WL 358519 (W.D. Pa. Jan. 25, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tapscott v. MS Dealer Serv. Corp.*,
    77 F.3d 1353 (11th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Johnson*,
    2022 WL 1592445 (E.D. Pa. May 19, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wood v. Crane*,
    764 F.3d 316 (4th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## CONSTITUTION, LEGISLATIVE MATERIALS AND RULES

United States Constitution

    Article III, Section 2, Paragraph 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    First Amendment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21, 22, 23
    Fourteenth Amendment, Section 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1332. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1332(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1446. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

28 U.S.C. § 1446(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C.§ 1446(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

28 U.S.C. § 1446(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 18, 24

H.R. Rep. No. 100-889 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Code of Civil Procedure Section 391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rules of Civil Procedure

Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10
Rule 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Rule 12(b)2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## OTHER AUTHORITIES

Wright & Miller,  FED. PRAC & PROC. JURIS. § 3733 (rev. 4th ed.) . . . . . . . . . . . . . . . . . . . . . . . 22

After plaintiff Joe Johnson repeatedly threatened that defendant Think Computer Corporation would be "tied up in litigation for the next year or so" if it did not accede to his meritless claim that posting publicly available court records violates privacy rights because such records contain contact information of litigants and their counsel, Greenspan Affirmation ("Aff.") ¶ 8 and Exhibit E, he filed this suit in state court. Within thirty days of receiving a complaint laying out this claim, the company's owner sent a Notice of Removal to this Court; then, when plaintiff objected (correctly) that a non-lawyer cannot file papers on behalf of a corporation, the company retained counsel who filed first an Amended Notice of Removal and then, after plaintiff argued that the original notice could not be amended, a new Notice of Removal— all within the thirty-day deadline.  Each notice alleged that plaintiff Johnson is citizen of Maryland, diverse from the defendant company, and that the amount controversy exceeds the jurisdictional amount set by 28 U.S.C. § 1332.

Moving to strike and remand, Johnson challenges the assertion that his citizenship is diverse, even though he himself has sued in diversity claiming to be a Maryland citizen; he offers no evidence that he is not a Maryland citizen.  He also disputes the amount in controversy, while introducing no evidence.  This memorandum shows that the diversity and amount in controversy requirements are met and that Johnson's quibbles about the procedures followed by the company to effect removal are based on miscitations of precedent and ignoring well-established principles governing removal. The motion for remand should be denied.

### STATEMENT OF FACTS AND PROCEEDINGS TO DATE

This action was brought by a prolific and almost-always-unsuccessful pro se litigant who objects that a record of his litigation failures and criminal convictions—identifying him by the names, addresses and phone numbers that he has made part of the public record by virtue of his role as a civil litigant acting pro se—are archived for ready access by the public.  Johnson claims that

these disclosures invade his privacy and have caused him sleepless nights and emotional distress.

Defendant Think Computer Corporation ("Think") operates, at PlainSite.org ("PlainSite"), a court-records aggregation site that, like similar websites such as CourtListener, Pacer Monitor and Justia, hosts the contents of the dockets of millions of lawsuits filed in courts throughout the United States. Access to the judicial documents on PlainSite is available free of charge to all users. Greenspan Aff. ¶ 3. Think is a Delaware corporation based in California. It is owned by Aaron Greenspan. *Id.* ¶ 2.

Plaintiff Joe Johnson, a resident of Fort Washington, Maryland, Complaint ¶ 2, has been party to more than one hundred fifty civil and criminal proceedings in state and federal courts across the country. *Id.* ¶ 4. The judicial records from many of his cases appear in the PlainSite database. As the records show, Johnson generally proceeds pro se in his civil cases. Because the name, addresses, phone numbers and email addresses of both litigants and counsel must be in the record, accessed through PACER, and because judges addressing his litigation have discussed Johnson's contact information in the course of resolving motions in his cases, *see, e.g., United States v. Johnson*, 2022 WL 1592445, at *1 (E.D. Pa. May 19, 2022), Johnson's name, phone number, address and email addresses appear repeatedly on PlainSite, as they do on every site that hosts and indexes the records of his federal litigation. Greenspan Aff. ¶ 4.

In this action, Johnson contends that his right of privacy under Maryland common law and statutory consumer laws bars Think from including this information from judicial records in a publicly accessible website.

Although the complaint alleges that PlainSite began to host documents containing Johnson's information in June 2022, and that Johnson only discovered this in that month, Johnson has known

about Think's hosting of such information since at least 2016.  In that year, and in 2018 and 2019,

Johnson submitted complaints through the PlainSite contact page objecting to the hosting of the

dockets in *Johnson v. Ashmore*, 2016 WL 3467052 (N.D. Tex. June 8, 2016), *report and*

*recommendation adopted*, 2016 WL 3406110 (N.D. Tex. June 21, 2016), *aff'd*, 681 Fed. App'x 345

(5th Cir. 2017), and threatened to sue.  Greenspan Aff. ¶¶ 8-9 and Exh. E.  On behalf of Think,

Greenspan explained that the First Amendment protects Think's right to host judicial records, and

that the supposed privacy-based causes of action were inapplicable.  *Id.*  Johnson never tried to

explain how the First Amendment defense could be overcome but reiterated his threat to sue,

warning that if the records were not removed, "you will be subject to a civil lawsuit, and will be tied

up in litigation for the next year or so litigating this issue."  *Id.*  Johnson sent these threats not only

to Greenspan personally but also to his parents.  *Id.*  Johnson renewed his complaints about the

hosting of the data in a series of communications in May and June 2022.  *Id.*

  This action began when Johnson filed a civil action on June 15, 2022 in the District Court

for Prince George's County, Maryland.  The District Court summons and complaint were never

served.  Greenspan Aff. ¶ 12.  On or about July 20, 2022, the Civil Action was transferred to the

Circuit Court for Prince George's County.  Greenspan received a document notifying Think of this

transfer, but the complaint in the case was not included.  *Id.*  On August 30, 2022, the complaint and

summons were mailed to Think, which received them on September 6, 2022.  *Id.* ¶ 11.

  The complaint alleged claims about invasion of privacy, based on both Maryland common

law and certain Maryland statutes, some of which authorize awards of attorney fees. The complaint

sought $25,000 in compensatory damages, plus monetary relief in unspecified amounts, including

general and special damages, plus punitive damages, plus attorney fees.

Greenspan set about trying to find counsel, but the cost was exorbitant by comparison to Think's fairly meager revenues. *Id.* ¶ 13. Cognizant of the strict 30-day deadline to remove state court lawsuits to federal court, Greenspan authored a notice of removal and sent it to this Court by Priority Mail; he served Johnson by first-class mail, and similarly sent a notice of the filing of removal by first-class mail to the Circuit Court for Prince George's County. *Id.* ¶ 18.

The papers reached this Court first, arriving on Friday, September 23, 2022; the Clerk placed them on the PACER docket with the caption "Johnson v. Think Computer Corporation" and the following notation: "filed by Aaron Greenspan o/b/o Think Computer Corporation." On Monday, September 26, the Clerk issued "Correspondence from Clerk to Defendant," addressed to "Think Computer Corporation c/o Aaron Greenspan Resident Agent." The Court correctly construed the Original Notice of Removal as having been filed by Greenspan on behalf of the corporation that he owns. Description of Docket Item Number ("DN") 1.

Apparently, the Original Notice of Removal did not reach the state court until Monday, September 26. Noted as having been filed first on the state court docket was a First Amended Complaint from Johnson that arrived on the same day, which added several new claims based on the fact that PlainSite had labeled Johnson a "vexatious litigant," which the amended complaint alleged to be defamatory and retaliatory. Judges in this district and elsewhere have previously criticized Johnson's pursuit of frivolous pro se litigation. *Johnson v. Experian Info. Sols.*, 2015 WL 7769502, at *6 (D. Md. Nov. 17, 2015), *aff'd*, 670 Fed. App'x 778 (4th Cir. 2016); *Johnson v. Affiliated Computer Servs.*, 2011 WL 4011429, at *1 (N.D. Tex. Sept. 9, 2011), *aff'd*, 500 Fed. App'x 265 (5th

Cir. 2012).[1]

The First Amended Complaint sought both damages and injunctive relief.  The damages claims included "an amount in excess of $75,000, as and for compensatory and punitive damages plus; b) An award of general and special damages . . . ; c) An award of punitive damages . . . [and] an award of costs and reasonable attorney fees."  This document appears in the PACER docket of Case No. 8:22-cv-02573-TDC as DN 1-4.  After this amended complaint was filed in the state court docket, that court filed the notice of Greenspan's filing of the Notice of Removal in federal court.

The following day, September 27, the state court filed on the docket a Second Amended Complaint that it had received from Johnson.  This amended complaint closely resembled the First Amended Complaint, except for changes in the relief requested.  This complaint still sought issuance of an injunction, but the prayer for monetary relief was rephrased as follows (at page 16): "in an amount that does not exceed $70,000, as and for compensatory, punitive, general, special and statutory damages but in an amount to be determined at trial for the Defendant's wrongful acts; and in an amount to be determined at trial for the Defendant's reprehensible and outrageous conduct, and to deter the Defendant's future reprehensible and outrageous conduct; plus b) An award of costs and reasonable attorney fees incurred in this action."  The state court docket does not explain why that court permitted the filing of a Second Amended Complaint the day after the state court received and filed the notice that the case had been removed, despite the prohibition in 28 U.S.C. § 1446(d).

Meanwhile, after having mailed the original Notice of Removal materials, Greenspan made

---

[1] Under section 391 of the California Code of Civil Procedure, a "vexatious litigant" is anyone who, over a period of seven years, files five or more unsuccessful lawsuits either through counsel or *pro se*, or who tries to relitigate, pro se, a claim previously adjudicated against him. Johnson plainly qualifies under either prongs.

contact with Think's undersigned counsel.  On September 28, Think filed an Amended Notice of Removal in this Court in Case No. 8:22-cv-02422-TDC, alleging that defendant is a citizen of Delaware and California while plaintiff is a citizen of Maryland.[2]  Regarding the amount in controversy, the Amended Notice of Removal alleged as follows (DN 6):

> 5.   . . . The Complaint alleged compensatory damages of $25,000 plus general, special, and punitive damages, as well as costs and reasonable attorney fees.
>
>       \*   \*   \*
>
> 8.  As set forth in the Circuit Court Complaint, Plaintiff seeks $100,000.00 or more in damages, in that he pleads claims for $25,000 in compensatory damages, plus general and special damages, punitive damages, and attorney fees, in his claim against Defendant. Consequently, the amount in controversy in the Circuit Court Complaint exceeds the sum of $75,000.00, exclusive of interest and costs.

On September 30, Johnson filed a motion to remand this case to state court, DN 10; later that day, Johnson filed a letter requesting leave to file a motion to remand.  DN 11.  Even later that same day, Johnson filed a letter requesting leave to move to strike the Amended Notice of Removal, contending that because the original removal was a nullity, it could not be amended.  DN 12.  On October 4, pursuant to the requirements of 28 U.S.C. § 1446(d), the state court noted that the case had been removed and closed its file pending a possible ruling on the motion for remand.

Think's counsel observed on October 4 that the state court docket indicated that two amended complaints had been filed.  Edwards Affirmation ¶ 3.  Because Johnson did not serve either amended complaint on Think, Greenspan Aff. ¶ 22, and the Prince George's Circuit Court had not yet implemented electronic docket access, counsel had to send someone to the state court clerk's office to retrieve the documents.  Edwards Aff.  ¶ 3.  After seeing those documents, and in an effort to

---

[2] For clarity, the notice filed on September 23 is referenced in this memorandum as the "Original Notice of Removal."  The amended notice of removal filed on September 28 is cited as "Amended Notice of Removal," and the new notice filed on October 6 is "Second Notice of Removal."

avoid unnecessary motion practice about the Original and Amended Notice of Removal, Think, through counsel filed a new notice of removal on October 6, 2022.  *Id.* ¶ 4.  That case was docketed as 8:22-cv-02573-TDC.

On October 20, the Court held a Case Management Conference to discuss plaintiff's proposed motion to strike the Amended Notice of Removal.  Although Johnson initially insisted that he had not sought damages "anywhere near" the $75,000 jurisdictional threshold, he omitted to mention the prayer for relief in the First Amended Complaint, which contained the phrase "in excess of $75,000."  Instead, when pressed, he took the position that the operative complaint was the Second Amended Complaint, which lowered his amended damages claim from "in excess of $75.000" to $70,000.  Johnson did not respond to the Court's expression of concern that after the remand to state court he was seeking, he might again increase his damages demand, and he did not address the value of the injunctive relief he was seeking.  The Court set a briefing schedule for Johnson's planned motion to remand and suggested to Johnson that he drop his objection to the fact that the Original Notice of Removal had been filed by a non-attorney in light of the fact that it was admitted that this was improper, but that the error had been corrected.  Plaintiff has now filed a motion to strike and to remand the case to the Circuit Court of Prince George's County.

## SUMMARY OF ARGUMENT

The lengthy citations of non-binding precedent that fill Johnson's brief obfuscate the simple rules governing notice of removal and the fact-finding process by which courts determine whether a case has been properly removed.  When the Court applies those rules to the facts and circumstances here, it should deny the motion to remand.

A defendant seeking to remove a case filed in state court based on diversity jurisdiction need

only allege, in general terms per Rule 8 of the Federal Rules of Civil Procedure, that the parties are citizens of different states (or, one a citizen of a state and one a foreign citizen) and that the amount in controversy exceeds $75,000.  If those allegations are properly challenged within 30 days of removal, the defendant has the burden of proving complete diversity.  Because, however, the Fourteenth Amendment provides that any citizen of the United States is a citizen of the state in which he resides, that burden is easily carried here: Johnson has at least twice filed lawsuits in federal court alleging diversity jurisdiction, including a suit filed this summer in which he alleged that he is a citizen of Maryland.

As for the amount in controversy, when a lawyer-signed pleading alleges damages in a **specified** amount, judges in this district have long accorded that allegation a presumption of correctness and required a removing defendant to establish to a legal certainty that the stated amount of damages is incorrect.  But when the complaint seeks damages in an **unspecified** amount, the defendant must show the amount in controversy by a preponderance of the evidence.  And when some monetary claims are alleged specifically, and some generally, the defendant meets the requirements by showing by a preponderance of the evidence that the multiple forms of monetary relief could add up to more than $75,000.  28 U.S.C. § 1446(c)(2)(B); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014); *Momin v. Maggiemoo's Intern.,* 205 F. Supp. 2d 506, 509-10 (D. Md. 2002).

In considering motions to remand in cases where the plaintiff has sought a non-specific amount of punitive damages, courts have calculated the amount in controversy by using ratios of punitive to compensatory damages based on what ratio is allowed by due process considerations and by the state courts in question.  Moreover, when injunctive relief is sought, the Fourth Circuit values

that relief from the perspective of the plaintiff or the defendant, whichever is higher.  Finally, when a plaintiff responds to removal by reducing the amount of damages sought in order to manipulate the selection of the forum, that change does not destroy federal jurisdiction.  Each of Johnson's complaints meets the amount in controversy requirement when the value of the requested monetary and injunctive relief is added to the specific amounts of damages alleged.

Finally, the bulk of the arguments in Johnson's motion papers are addressed to the fact that non-attorney Greenspan filed the initial notice of removal, despite the Court's suggestion that he omit that issue.  Longstanding authority holds that a notice of removal may be freely amended so long as the amendment is submitted within thirty days after the defendant receives the complaint (or other documents) showing the basis for subject matter jurisdiction supporting removal.  After that thirty days expires, defective allegations of subject matter jurisdiction that existed at the time of removal may be amended, but new grounds for jurisdiction may not be added by amendment.  The amendment here was offered within the initial thirty-day period, and in any event the defect in the initial removal was not jurisdictional.  Although non-parties may not remove lawsuits, here, where the 100% owner of the defendant company submitted the removal notice, the Court correctly interpreted the Original Notice of Removal as having been made on behalf of the defendant company.  And the company, through counsel, promptly embraced the removal, both by submitting an Amended Notice of Removal and then by submitting a de novo removal notice after Johnson claimed, incorrectly, that a defective removal notice cannot be amended.

Insisting simultaneously that removal was both a "nullity" and irrevocably binding, Johnson relies on a number of cases holding that, once final judgment has been entered in a state court, the case cannot be removed to federal court as an indirect way of seeking review of the state court

judgment.  But no case holds that a new notice of removal cannot be filed after the original notice is challenged.  Indeed, successive removals are common when developments in the state court reveal that the amount in controversy is met.  Even if Johnson were correct that his original complaint did not meet the amount in controversy requirement, then the October 6 Second Notice of Removal was filed just one day after defendant first obtained Johnson's unserved First and Second Amended Complaints, each of which plainly meets the amount in controversy requirement.

## ARGUMENT

I.      **THE AMENDED NOTICE OF REMOVAL AND SECOND NOTICE OF REMOVAL PROPERLY PLEADED DIVERSITY JURISDICTION, AND DEFENDANT HAS SHOWN THAT DIVERSITY JURISDICTION EXISTS.**

### A.      Because the Notices of Removal Pleaded the Elements of Diversity Jurisdiction, the Court Should Apply the Preponderance of Evidence Standard to Decide Whether There is Diversity Jurisdiction Here.

Pursuant to 28 U.S.C. § 1446, a defendant seeking to remove a case filed in state court need only file a notice containing a 'short and plain statement' alleging that the elements of federal jurisdiction have been met.  The sufficiency of the notice is judged by the same standard as a complaint filed by a plaintiff: "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the 'pleading' requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014), quoting H.R. Rep. No. 100-889, p. 71 (1988).  Here, the Original Notice of Removal, the Amended Notice of Removal, and the Second Notice of Removal docketed as Case No. 8:22-cv-02573-TDC, all meet the Rule 8 standard for alleging diversity jurisdiction by alleging that plaintiff is a citizen of Maryland, that defendant is citizen of Delaware and California, and that the amount in controversy

-10-

exceeds $75,000.  No more was required from each notice of removal.

Citing *Maggimoo's*, Johnson argues that the Court is required to accept his allegation of $25,000 in compensatory damages in his initial complaint unless Think proves, to a legal certainty, that the requirements for diversity jurisdiction have been met.  Memorandum Supporting Remand ("Remand Mem.") at 18.  What *Maggiemoo's* actually says does not support Johnson's argument:

> [A] pleading containing a specified demand of damages and signed by a lawyer [i]s due deference and a presumption of truth.  [T]he defendant's burden [is] a 'heavy one' and the legal certainty standard was therefore appropriate. . . . If, on the other hand, a plaintiff's complaint does not allege a specific amount in damages, a defendant need only prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.

> 205 F. Supp.2d at 509-510

The opinion quoted *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir.1996) and cited *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1094 (11th Cir.1994) on the basis for the heavy presumption, then went on to discuss circumstances similar to this case:

> This case presents the court with a hybrid situation in which the amount in controversy is neither entirely specified nor unspecified.  Although plaintiffs allege a specific amount of damages in their complaint, they also request and are entitled to attorneys' fees, which are, as yet, undetermined.  The exercise of federal jurisdiction in this case turns on whether an award of attorneys' fees will exceed six thousand dollars.  Thus, the court will apply the preponderance of the evidence standard in determining whether defendant has met its burden as to that portion of the amount in controversy.

> 205 F. Supp.2d at 510.

*Maggiemoo's* has been widely cited in this district as setting the proper evidentiary standard, *see, e.g.*, *Mudd v. Comcast of Maryland*, 2015 WL 773017, at *4 (D. Md. Feb. 23, 2015).

*Dart Cherokee* similarly places on the removing defendant the burden of establishing the prima facie amount in controversy by pleading it in the notice of removal:

-11-

When a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court. . . If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval ... is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold. This provision, . . . clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.

574 U.S. at 88.

In this case, as in *Maggiemoo's*, the Court must assess a hybrid situation based on the original complaint, because that complaint limited only the compensatory damages to $25,000, but also sought an unspecified amount of general damages, an unspecified amount of punitive damages, and an unspecified amount of attorney fees. The First Amended Complaint sought more than $75,000 in compensatory damages, and the Second Amended Complaint sought injunctive relief in addition to $70,000 in monetary relief. As shown below in Part I(C), defendant's evidence meets the standard described in *Dart Cherokee* and *Maggiemoo's*. Indeed, Johnson has submitted no evidence in support of his motion to remand.[3]

B.    **The Evidence Establishes that Johnson Is a Citizen of a State Diverse from Think.**

Johnson has devoted two pages of his memorandum to arguing that Think should be required to "prove" that his citizenship is "truly diverse" from Think's. For the most part, his papers dance around the question of his own citizenship, coyly saying only that the burden of proof rests on defendant, and that "the existence of citizenship cannot be inferred from allegations of mere

---

[3] If Johnson supplements his motion to remand by submitting evidence on the existence of diversity jurisdiction, Think would seek leave to pursue discovery to pierce any such evidentiary claims.

-12-

residence," Remand Mem. at 20.  He never outright disputes the allegation in the notice of removal that he is a citizen of Maryland, but says, in passing, that a reading of his complaints "reveals that this case lacks complete diversity."  *Id.*  That assertion is false.

First of all, the Original Notice of Removal, the Amended Notice of Removal, and the Second Notice of Removal, whose allegations stand unless properly controverted by Johnson, each specify that Johnson is a citizen of Maryland.  Johnson's Complaint alleged his past residence in Maryland, ¶ 2, and defendant's evidence shows that he has lived there for many years.  See Greenspan Aff., ¶ 14 and Exh. G and H.  The evidence submitted by Think shows that Johnson both is a citizen and a resident of Maryland.

First of all, on three separate occasions, Johnson has relied on his Maryland citizenship as a basis for  asserting diversity jurisdiction state-law claims, in two of those cases against lawyers who represented parties adverse to himself; these statements are admissible against Johnson as statements by a party.  He did this in *Johnson v. Ashmore* several years ago, when he told the United States District Court for the Northern District of Texas that he was a "citizen of another State" as a basis for suing two lawyers for their roles in a civil lawsuit that Johnson had brought against their clients.  *See* Greenspan Aff. ¶¶ 7 and 15 and Exhibit I. He could not have been a citizen of the (unspecified) other state, for diversity purposes, unless he was also a citizen of the United States.[4] In the underlying case, Johnson had originally sued based on diversity of citizenship, but after he lost, he sought to undo the dismissal with prejudice by contending that his own pleadings had not sufficiently alleged complete diversity because, he contended, he had reason to believe that the

---

[4] Even if Johnson were a foreign citizen, his citizenship would be diverse with Think under 28 U.S.C. § 1332(a)(2) and  the final clause of Article III, Section 2, Paragraph 2.

defendant LLC was a citizen of Maryland. *Johnson v. Affiliated Computer Servs.*, 500 Fed. App'x 265, 266 (5th Cir. 2012) (unpublished). Johnson also invoked diversity jurisdiction to sue an Assistant United States Attorney and an FBI agent for allegedly deliberately engaging in wrongful prosecution, relying on the allegation that he is a "citizen of Maryland." *Id.* ¶ 15, and Exh. I.  It is at the very least fair to infer that Johnson was a citizen of Maryland when he sued Think just one month earlier and remained a citizen of Maryland at the time of Think's removal in September, particularly considering that his Maryland residence has been continuous for many years.  This evidence, as well as Johnson's refusal to present any evidence to the contrary, show that diversity of citizenship is satisfied.

### C.      The Evidence Establishes That More than $75,000 Is in Controversy.

The First Amended Complaint, which seeks "in excess of 75,000" in damages as well as injunctive relief, plainly meets the amount in controversy requirement.  So, too, do the original complaint and, if the court considers it, the Second Amended Complaint.

Beginning with the original complaint, even if the pleading of $25,000 in compensatory damages is taken at face value (a matter discussed below), the original complaint also sought unspecified amounts of special or general damages, of punitive damages, and of attorney fees.  To determine the amount in controversy, these separate amounts are quantified and added to the compensatory damages.[5]

The punitive damages claim alone brings the amount in controversy past $75,000. "Notably,

---

[5] As discussed at the Case Management Conference, because Johnson has proceeded pro se to this point, he cannot receive an award of attorney fees despite his evident legal training.  *Kay v. Ehrler*, 499 U.S. 432, 437 (1991).  In theory, Johnson might retain counsel as he has done in several other cases.

[the proponent of jurisdiction] does not have to prove that [plaintiff] has actually sustained damages in excess of the jurisdictional threshold; it need only show that damages potentially in excess of the threshold are in controversy .... [t]he 'jurisdictional fact ... is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are." *Mudd v. Comcast of Maryland*, 2015 WL 773017, at *4 (D. Md. Feb. 23, 2015) (bracketed material and elipses in original), quoting *Joy Family Ltd. Part. v. United Financial Banking Cos.*, 2013 WL 4647321 at *7 n. 13 (D. Md. Aug. 28, 2013).

When an unspecified amount of punitive damages is pleaded, "courts permit removing parties to rely, for estimation purposes, on reasonable multipliers / percentages." *Hacker v. Aetna Life Ins. Co.*, 2019 WL 638369, at *2 (E.D. Ky. Feb. 13, 2019). "These ratios / multipliers do not signify arbitrary, random choices . . . . Instead, [they] receive consistent support in the case law." *Id. See also Heyman v. Lincoln Natl. Life Ins. Co.*, 781 Fed. App'x 463, 472-73 (6th Cir. 2019), *affirming Heyman v. Lincoln Natl. Life Ins. Co.*, 2017 WL 3274452, at *3 (W.D. Ky. Apr. 27, 2017). Consequently, when the claim for compensatory damages ranges from $15,000 to $25,000, an allegation of an unspecified amount of punitive damages can lift the case above the minimum amount in controversy. *Schueller v. Wells Fargo & Co.*, 2016 WL 10538996, at *7 (D.N.M. May 3, 2016), *report and recommendation adopted*, 2016 WL 10538997 (D.N.M. May 27, 2016); *Chek v. State Farm Fire and Cas. Co.*, 2014 WL 12680676, at *3-4 (E.D.N.C. Mar. 17, 2014); *Copak v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 450198, at *2 (N.D. Ind. Feb. 6, 2013); *Stehle-Rosellini v. Allstate Corp.*, 2010 WL 358519, at *4 (W.D. Pa. Jan. 25, 2010); *Harvey v. U.S. Life Ins. Co. in City of New York*, 2008 WL 2805608, at *2 (E.D. Pa. July 18, 2008). By contrast, when the compensatory damages are in the low four figures, the ratio of permissible punitive damages that

would be needed to bring the amount in controversy above $75,000 will likely be too great to justify removal. *Food & Water Watch v. Smithfield Foods*, 2021 WL 8821537, at *2 (D.D.C. Dec. 6, 2021); *Bunton v. Cape Cod Village*, 2009 WL 2139441, at *3 (C.D. Ill. July 6, 2009).  Indeed, a Justice Department study shows that the median award of punitive damages in cases in the state courts is $64,000, and that the median amount of punitive and compensatory damages combined in the great majority of cases, where the ratio of punitive to compensatory damages was three to one or less, was $100,000.  Greenspan Affidavit, Exhibit J.

Looking specifically at Maryland caselaw, punitive damages awards affirmed on appeal may often run above $50,000, and ratios of punitive damages to compensatory damages above two to one are not uncommon.  *Harvey-Jones v. Coronel*, 196 A.3d 36, 46 (Md. Spec. App. 2018) (collecting cases and affirming award of $200,000 even though compensatory damages were only $10,000); *Khalifa v. Shannon*, 945 A.2d 1244, 1247, 1268-69 (Md. 2008) (collecting cases and affirming 2.22 to 1 and 2 to 1 punitive damages); *Merritt v. Craig*, 746 A.2d 923, 926 (Md. Spec. App. 2000) (holding that $150,000 in punitive damages was not excessive in light of $42,265 in compensatory damages).  Here, where the claimed compensatory damages in the original complaint are $25,000, the unspecified punitive damage claim is alone sufficient to put the amount in controversy over $75,000.

Moreover, the general and special damages in an unspecific amount must also be aggregated. General damages, such as for loss of reputation and injury to feelings, need not be alleged in detail and are generally available as a remedy for privacy torts.  *F.A.A. v. Cooper*, 566 U.S. 284, 295-96 (2012); *Doe v. Chao*, 540 U.S. 614, 621 n. 4 (2004). The allegations of such injuries set forth in the original complaint with respect to each cause of action—"loss of interest in privacy, deprivation of

his seclusion, emotional distress, loss of sleep, loss of enjoyment of life, humiliation, and embarrassment, financial los[s]es, fraud, identity theft, other losses, and damages to be proven at trial", Complaint ¶¶ 7, 17, 27, 41—could easily provide a basis for an award of general damages of $10,000 or more.

As for the Second Amended Complaint, that complaint cannot be considered at all in determining diversity jurisdiction.  Although Johnson sent the Second Amended Complaint to the Circuit Court, he never served it on Think, Greenspan Aff. ¶ 22, and he did not file any Certificate of Service with that Second Amended Complaint, Edwards Aff. ¶ 5.  This omission was fatal because, under Maryland law, the failure to file a certificate of service can result in the paper being retroactively deemed "not filed."  *Lovero v. Da Silva*, 28 A.3d 43, 52 (Md. Ct. Spec. App. 2011). Even if a court clerk initially accepts the paper, that omission must be corrected once the error is noted, and the error is jurisdictional. Thus, in *Lovero*, when a notice of appeal that was filed without a certificate of service, the notice of appeal was stricken retroactively and the appeal dismissed for lack of a timely appeal.  *Id.*  Here, too, because Johnson filed his Second Amended Complaint but never served it, that complaint should not be considered for purposes of his remand motion.[6]

Moreover, Johnson's Second Amended Complaint, would not deprive the Court of diversity jurisdiction in any event, for several reasons.  First, the filing of a post-removal amended complaint that reduces the amount in controversy below the statutory threshold does not impair diversity jurisdiction.  *In Touch Concepts v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015); *citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938); *Gebbia v. Wal-Mart Stores*, 233 F.3d

---

[6] Although federal procedural law governs the filing of documents in federal court under *Erie* principles, state law should be used to assess whether a document was properly filed in state court.

880, 883 (5th Cir. 2000); *Lang v. Manufacturers & Traders Tr. Co.*, 274 F.R.D. 175, 181 (D. Md. 2011) ("[E]ven if the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."). This Court applied that rule in *Perry v. National Association of Home Builders of the United States*, No. THC-20-0454 (D. Md. Sept. 28, 2020). https://scholar.google.com/scholar _case ?case=17209313522313030262, flatly refusing to allow a plaintiff to secure a remand by amending her complaint to reduce the damages demand. At most, such post-removal amendments leave district courts with discretion on whether to send the case back to state court. Courts generally display healthy skepticism when a post-removal amendment, or even an affidavit or stipulation, is offered with the evident intention of manipulating the forum to defeat the jurisdictional choice that Congress has afforded to diverse defendants sued for more than the amount in controversy. *Touch Concepts*, 788 F.3d at 101 (such amendments "raise forum-manipulation concerns that simply do not exist when it is the plaintiff who chooses a federal forum and then pleads away jurisdiction through amendment," quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n. 6 (2007)); *Gomer v. Home Depot U.S.A.*, 2016 WL 5791226, at \*4 (D. Md. Oct. 4, 2016) ("If parties were able to defeat jurisdiction by way of post-removal [amendments], they could unfairly manipulate judicial proceedings.").

That exception holds particular force here, because the Second Amended Complaint was filed in state court after that court docketed the notice that the Notice of Removal had been filed, acknowledging that the case had been removed to federal court. Pursuant to 28 U.S.C. § 1446(d), filings in state court after removal are nullities. *Perez v. Sodexo, Inc.*, 2021 WL 2333640, at \*4 (E.D.N.Y. June 7, 2021); *Alexander v. Kirkpatrick*, 2019 WL 4164882, at \*2 (D.N.M. Sept. 3, 2019),

*report and recommendation adopted*, 426 F.Supp.3d 1005 (D.N.M. 2019).  The last operative state court complaint is the First Amended Complaint, which was filed in state court after the initial Notice of Removal was first filed in federal court, but before the notice of that filing was filed to the state court docket; during that period, the state court retains concurrent jurisdiction with the federal court.  *Burroughs v. Palumbo*, 871 F. Supp. 870, 872 (E.D. Va.1994); *Doustout v. G.D. Searle & Co.*, 680 F. Supp. 49, 50 (D. Me. 1988).

It is simply not credible that the amount of damages went down from more than $75,000 in compensatory damages alone, plus general and punitive damages, as of September 26 when the First Amended Complaint was filed, to under $70,000 in compensatory plus general plus punitive damages just a day later.   Under 28 U.S.C. § 1446(c)(2), the pleading of a specific amount of damages, even in "the initial pleading," is entitled to deference only if it is made "in good faith."  But the Second Amended Complaint is not the initial pleading, and it is apparent that Johnson was reducing his damages claim for the sole purpose of defeating Think's statutory right to defend this case in federal court based on the damages that Johnson pleaded in his original and First Amended Complaints.  Such manipulative pleading is the opposite of good faith, and that fact alone deprives Johnson of any benefit of having this assertion of the monetary relief being given a presumption of validity.

Moreover, unlike the circumstances described by Judge Blake in *Maggiemoo's*, and by the appellate decisions on which that opinion relied, Johnson is not a lawyer; to the contrary, he is a many-times-convicted liar and forger who has shown no compunction about deceiving judges when he considers it to be in his personal interest to do so. *See* Greenspan Aff. ¶ 5 and Exh. A to D.  The Court should disregard entirely his assertion that he is seeking only $70,000 in monetary relief, and

in any event, because the total amount in controversy must include the value of the injunction that he seeks, the Court should deny the motion to remand to state court.

Finally, the post-removal Second Amended Complaint would not destroy diversity jurisdiction, because the damages claim must be aggregated with the claim for injunctive relief.[7] And Fourth Circuit law is clear that the value of an injunction for amount in controversy purposes is established by the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant. *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010), citing *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir.2002). It cannot be doubted that the injunction that Johnson seeks is worth more than $5,000 to him. After all, the Second Amended Complaint alleges that relative to the initial complaint, Johnson suffered an additional $45,000-$50,000 worth of damages incurred for alleged defamation during the brief period of three weeks between September 9, 2022 and the date of the Second Amended Complaint. Assuming the veracity of these claims, it follows that issuance of an injunction barring any further continued publication of supposedly private information and supposedly defamatory content must be worth far more than $5,000.

Nonetheless, in *Brennan v. Stevenson*, 2015 WL 7454109, at *2 (D. Md. Nov. 24, 2015), a lawyer sued a blogger for a single count of defamation based on a single online article accusing the lawyer of "harassing and doxxing trans women on websites," seeking $70,000 in damages as well as injunctive relief. The court remanded the case, deciding that the defendant's assertion that the injunction's value must be worth at least $5000.01 to the plaintiff or inflict at least $5000.01 worth of harm on the defendant was too "speculative" to be considered in assessing the value of the

---

[7] The Court pointed out at the Case Management Conference that the language of the prayer for relief in the Second Amended Complaint reflects some ambiguity about whether the $70,000 claim is limited to compensatory damages or includes punitive damages as well. .

requested injunctive relief, and that, because the First Amendment provides no protection for defamatory speech, the defendant could assert no value in her continued publication of that speech. In contrast, here, the claims are not only for defamation but also for a variety of privacy torts, and Johnson seeks to suppress not just a single item of Think's web site but every entry on that web site that pertains to Johnson and that reflects his contact information and his litigation conduct, as well as judicial findings of his criminal conduct over the past dozen years. Indeed, Johnson does not only seek injunctive relief against specific statements who falsity and mens rea might be addressed during the merits litigation, and thus be determined to be unprotected by the First Amendment. His claim is for a broad injunction against anything "otherwise defamatory or harassing," Second Amended Complaint ¶ 61, which would effectively bar Think from ever saying anything about Johnson lest it be held in contempt based on a retroactive determination of what was defamatory or harassing. Such an injunction would be worth much more to Johnson, and impose much more harm on Think, than the injunction sought by Brennan against Stevenson.

Moreover, injunctive relief cannot be granted unless a court weighs the relative harms and finds that the potential harm to the plaintiff clearly outweighs the burden on the defendant. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006). Johnson has alleged not only damage to his reputation, a somewhat speculative form of harm, but also claims financial losses, identity theft and loss of credit, which are specific monetary harms that would undoubtedly increase (assuming the veracity of his allegations) over the several years following the date of removal and that the injunction for which he prays would prevent. Moreover, the burden on the defendant in a case involving speech is a prior restraint, so the value to the plaintiff in obtaining that relief must be quite substantial. To the extent that *Brennan* stands for the proposition that the value to a plaintiff from

-21-

suppressing the speech of a defendant cannot amount to as little as $5000.01, the Court should not follow it.

Additionally, the First Amendment values at stake in this case reflect not only Think's free speech, but also the public's ready access to judicial records, which the Fourth Circuit has held is rooted in the First Amendment. *Doe Company v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). Consequently, to be entitled to injunctive relief, the value to the plaintiff must outweigh not only Think's First Amendment rights but the public interest in allowing unimpeded public access to judicial records.

As a result, even if the Second Amended Complaint is entitled to any consideration at all on the motion to remand, the Court should find that it meets the amount in controversy threshold.

## II.    THE NOTICES OF REMOVAL PROPERLY BROUGHT THIS CASE TO FEDERAL COURT.

The initial notice of removal was submitted by Aaron Greenspan on behalf of the defendant company, of which he is the 100% owner. Recognizing that an owner cannot file in the name of his company unless the owner is a lawyer, the company retained counsel and filed the Amended Notice of Removal. Johnson contends that a notice of removal that is filed by a corporation's owner cannot be amended, but he is wrong for two separate reasons.

First, contrary to Johnson's contention that a notice of removal filed without jurisdiction cannot be amended, "Removal petitions may be freely amended for thirty days after a defendant receives a copy of the state court complaint." *Shaw v. Dow Brands*, 994 F.2d 364, 368 (7th Cir. 1993), accord 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3733 (rev. 4th ed.); *Cohen v. Herick*, 2015 WL 12820463, at *2 (M.D. Fla. Jan. 9, 2015); *Newman v. Spectrum Stores*, 109 F.

Supp. 2d 1342, 1347 (M.D. Ala. 2000); *Runge v. Maffei*, 1996 WL 164383, at *1 (N.D. Ill. Apr. 2, 1996).   It is only after that thirty days that the ability to amend is limited to fixing defective allegations of jurisdiction contained in the original notice. *E.g.*,   *Hall v. Coca-Cola Co.*, 2018 WL 4928976, at *5 (E.D. Va. Oct. 11, 2018).   "The upshot," the Fourth Circuit has explained is that "after thirty days, district courts have discretion to permit amendments that correct allegations already present in the notice of removal. Courts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis." *Wood v. Crane*, 764 F.3d 316, 323 (4th Cir. 2014); *see also McFadden v. Fed. Nat. Mortg. Ass'n*, 525 Fed. App'x 223, 233 (4th Cir. 2013).   Here, the amendment was offered within the first thirty-day period and hence is "freely allowed" even if Johnson were correct that the defect in the Original Notice of Removal was jurisdictional.

Second, the defect was not jurisdictional. The cases that Johnson cites all involve third parties whose interests were allegedly affected by the state court complaint, or who asserted that they should properly have been made co-defendants.   In contrast, the Original Notice of Removal here was filed by the 100% owner of the defendant company, who suffers injury-in-fact when a lawsuit is filed against his property, and who was trying to ensure that his company could defend its First Amendment rights in federal court.   Although Greenspan could not file the removal notice for his company because he is not a lawyer, the cases consistently hold that filing on behalf of a company by a non-lawyer official or owner is not jurisdictional.  *See In re IFC Credit Corp.*, 663 F.3d 315 (7th Cir. 2011); *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873-74 (5th Cir. 2004); *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556-57 (10th Cir. 2001); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Educ.*, 209 F.3d 18, 22 (1st Cir. 2000); *In re Bigelow*, 179 F.3d 1164, 1165-66 (9th Cir. 1999).   Instead, these cases indicate that such a filing can be accepted so long as the corporation

-23-

promptly appears by counsel.  This principle was endorsed by the Fourth Circuit in an unreported

decision.  *Amzura Enterprises v. Ratcher*, 18 Fed. App'x 95, 101 (4th Cir. 2001).  Indeed, the

consistent practice of the federal courts, when an appearance is attempted for a corporation by a

non-lawyer officer, is for the court to warn the company that it cannot appear without counsel and

that a default, if the corporation is a defendant, or a dismissal, if the entity is a plaintiff, will ensue

unless counsel appears.  *See Memon v. Allied Domecq QSR*, 385 F.3d 871, 873-74 (5th Cir. 2004).

Here, Think did not wait to be warned, but promptly retained counsel and filed the Amended

Removal Notice less than a week after the Original Notice of Removal was filed.

Third, once counsel saw that Johnson had objected to any amendment of the Original Notice

of Removal, they sought to simplify the case procedurally by filing the Second Notice of Removal

on October 6, 2022, obtaining a new case number.  Johnson objects to that notice as well, pointing

to the fact that the Circuit Court closed its file pursuant to 28 U.S.C. § 1446(d) on October 4, 2022.

But Johnson cites only a series of district court decisions that involve a very different scenario than

what transpired here.  In those cases, a party that had litigated in state court and had a final judgment

entered against it—in most cases, a foreclosure or a child-support order—removed the state court

case to federal court, in effect seeking to pursue an appeal from the state court judgment, in defiance

of the *Rooker-Feldman* doctrine.  Those suits could have been dismissed on jurisdictional grounds,

*Lance v. Dennis*, 546 U.S. 459, 460 (2006) (describing the *Rooker-Feldman* doctrine as

jurisdictional), but most of those courts held that the case could not be removed.

By contrast, here, the closure did not represent the end of the case, but only a temporary one

based on removal, pending a possible remand from federal court in the event of a successful motion

to remand.   The case or controversy between the parties remains alive, and hence there remains a

case that can be removed.[8]  Moreover, if Johnson were right that the Original Notice of Removal was a jurisdictional nullity that did not give this Court jurisdiction to allow an Amended Notice of Removal, then it follows that the removal to this Court could not have had the effect of ousting the jurisdiction of the state courts.  Johnson cannot have it both ways: either this Court has jurisdiction, divesting the state court of jurisdiction, or the state court retained jurisdiction and the case could still be removed within the first thirty days.

Indeed, even if Johnson were right that the initial complaint did not meet the amount in controversy requirement, and that the original Notice of Removal could not be amended, his First Amended Complaint and Second Amended Complaint, which Johnson portrayed at the Case Management Conference as stating his current claims against Think, plainly are removable once the value of the injunctive relief that Johnson seeks is added to the "over $75,000 in damages" and "70,000 in damages," respectively, that they seek.  But on Johnson's argument, Think cannot remove the case because the district court temporarily closed its file on October 4, and will not be able to remove the case unless the Court grants the motion to remand, even if that occurs long after Think's 30-day removal deadline expires.  No legal principles or precedents demand that inequitable result.

Finally, Think would have filed its Second Notice of Removal before October 6 had Johnson not engaged in the abusive practice of filing his First and Second Amended Complaints without serving Think.[9]  Not only was no Certificate of Service filed with either amended complaint,

---

[8] In *Nieto v. University of New Mexico*, 727 F. Supp. 2d 1176 (D.N.M. 2010), one of the postjudgment cases that Johnson cites, Remand Mem. at 15, the court said that if the case or controversy remains alive in a closed case, the case is subject to removal.  *Id.* at 1193-1194.

[9] As of October 17, 2022, Prince George's County has finally adopted electronic filing and access for attorneys via the Maryland-wide MDEC web-based portal.

-25-

Edwards Aff. ¶ 5 , but Think has still not received either amended complaint by mail from Johnson. Greenspan Aff. ¶ 22.  Think has these documents because it checked the state court's docket in preparation for filing the Second Notice of Removal (which requires a listing of the state-court filings) and then hired a contractor to go to the state court clerk's office to retrieve them.

<p style="text-align:center">* * *</p>

Both the Amended Notice of Removal and the Second Notice of Removal provide an appropriate basis for the Court to maintain federal jurisdiction.  If the Court chooses to maintain one case and dismiss the other, and then grants Think's planned motion to dismiss, Johnson will inevitably argue on appeal that the Court chose the wrong one and that the entire matter should be sent back to the state court.  Defendant therefore urges the Court to maintain this proceeding based on both case numbers.

<p style="text-align:center"><strong>CONCLUSION</strong></p>

The motion to remand to state court should be denied.  The Court should schedule a Case Management Conference to discuss Think's requested motion to dismiss under Rules 12(b)(2) and 12(b)(6).

<div style="margin-left:40%">

Respectfully submitted,

  /s/ Paul Alan Levy
Paul Alan Levy (DC Bar 946400)
 Public Citizen Litigation Group
 1600 20th Street, NW
 Washington, D.C. 20009
 (202) 588-7725
 plevy@citizen.org

  /s/ Oliver L. Edwards
OLIVER L. EDWARDS (#17006)
Law Office of Oliver Edwards LLC

</div>

<p style="text-align:center">-26-</p>

9919 Rogart Road
Silver Spring, Maryland 20901
Voice: 301-841-8050
Fax: 301-273-1020

November 2, 2022                                    Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on this date I am causing this memorandum, along with its supporting affidavits and exhibits and the proposed order, to be served on the pro se plaintiff Joe Johnson by filing it by ECF, which will in turn effect service on Johnson.

                                                         _____ s/   Paul Alan Levy _____

November 2, 2022